UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HARRY BARNETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18 C 7946 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| CITY OF CHICAGO, a Municipal ) | |
| Corporation, CHICAGO POLICE OFFICER ) | |
| ALEXANDER KULISEK, an individual, and ) | |
| in his official capacity, COOK COUNTY ) | |
| State's Attorney ex rel. ANITA ALVAREZ, ) | |
| an individual, and in her official capacity, ) | |
| COOK COUNTY State's Attorney ex rel. ) | |
| KIMBERLY FOXX, an individual, and in her ) | |
| official capacity, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Plaintiff Harry Barnett bought an inoperative scooter from a former employee. After Barnett posted the scooter for sale on Craigslist, Chicago Police Officer Alexander Kulisek set up a meeting with Barnett as an interested buyer and at that meeting arrested Barnett, claiming the scooter was stolen property. Kulisek allegedly included fabricated evidence in Barnett's arrest report to support a charge for theft of lost/mislaid property. Barnett blames this allegedly falsified police report for his detention and his prosecution.

Barnett initially filed this lawsuit against Kulisek and the City of Chicago ("the City Defendants"); when he amended his complaint, he added claims against former and current Cook County State's Attorneys Anita Alvarez and Kimberly Foxx ("the State's Attorney Defendants"). In his amended complaint, Barnett alleges that the City Defendants violated 42 U.S.C. § 1983 by fabricating evidence against him and using it at the probable cause hearing (Counts I and II), that

the State's Attorney Defendants violated § 1983 by prosecuting him with fabricated evidence and without probable cause (Counts III and IV), and that the City Defendants maliciously prosecuted him in violation of § 1983 and/or Illinois state law (Counts V and VI). The City Defendants and the State's Attorney Defendants have all moved to dismiss Barnett's amended complaint under Federal Rule of Civil Procedure 12(b)(6).

The Court allows Barnett to proceed with the federal wrongful detention claims (Counts I and II) because they did not accrue until Barnett's acquittal and Barnett has sufficiently pleaded these claims. The Court dismisses Barnett's § 1983 claims against the State's Attorney Defendants (Counts III and IV) with prejudice as barred by Eleventh Amendment and prosecutorial immunity. To the extent Barnett's malicious prosecution claims (Counts V and VI) arise under federal law, the Court dismisses them with prejudice because they fail to allege a cognizable constitutional tort. To the extent Barnett's malicious prosecution claims (Counts V and VI) arise under state law, the Court dismisses them with prejudice as barred by the statute of limitations.

## BACKGROUND[1]

On or about September 28, 2016, Harry Barnett bought an inoperative scooter from his former co-worker Daniel Santos for sixty dollars. After Barnett listed the scooter for sale on Craigslist, he was contacted by interested buyers, including Chicago Police Officer Alexander Kulisek. Barnett and Kulisek arranged to meet on September 30, 2016, so that Kulisek could view the scooter. Kulisek believed his own scooter had been stolen and that the scooter in Barnett's possession was his stolen property. After viewing the scooter, Kulisek and other

---

[1] The facts in the background section are taken from Barnett's amended complaint and are presumed true for the purpose of resolving the pending motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

Chicago police officers arrested Barnett, based on his possession of the stolen scooter, and took him to a police station. Kulisek and another officer questioned Barnett, who provided them with contact information for Santos as well as documentation of his purchase of the scooter from Santos. Kulisek then prepared an arrest report, in which he stated that Barnett "made no attempt to identify the owner and failed to take reasonable measures to restore the property to the owner, intending to deprive the owner permanently of the use/benefit of the property." Doc. 45 ¶ 39. Barnett asserts that he was never asked about anything that would lead Kulisek to believe those facts. Based on the arrest report, superior officers approved probable cause for Barnett's arrest and detention on the charge of "Theft of Lost/Mislaid Property." *See* 720 Ill. Comp. Stat. 5/16-2.

Barnett was formally charged on September 30, 2016 and was detained until approximately 3 a.m. on October 1, 2016. A judge released Barnett on an I-bond that required him to petition the court for permission to leave Illinois. A judge denied his request for permission to travel home to Florida. At some point between his release and December 2, 2016, Barnett met with the prosecutor on his case, Cook County Assistant State's Attorney Angelica Griffin-Johnson. Doc. 45 ¶ 39, Doc. 69 at 7.[2] ASA Griffin-Johnson worked under the State's Attorney Defendants at the Cook County State's Attorney's Office. At that meeting, ASA Griffin-Johnson refused to drop the charges against Barnett. Barnett then proceeded to trial on the charge against him. At a December 2, 2016 post-trial hearing, ASA Griffin-Johnson

---

[2] The Court considers the additional facts included in Barnett's response that are consistent with the amended complaint. *See, e.g.*, *Knox v. Curtis*, 771 F. App'x 656, 658 n.2 (7th Cir. 2019). ("A plaintiff may 'supplement' the complaint with 'extra assertions' in a memorandum opposing a motion to dismiss." (citation omitted)).

3

attempted to recant Kulisek's trial testimony and to "continue[ ] prosecuting Barnett." Doc. 45 ¶ 41. Barnett was ultimately found not guilty on December 2, 2016.[3]

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I.     Fabrication of Evidence (Count I)

Barnett claims that Kulisek violated his Fourteenth Amendment right to due process by including false evidence in his arrest report—that Barnett failed to take reasonable steps to locate the owner of the scooter and had the intent to deprive the owner of the property—and using that false information to mislead his superiors into approving the probable cause determination and charges against Barnett. The City Defendants contend that Barnett's claim arises only under the

---

[3] In his motion for leave to file a surreply, Barnett asserts that the amended complaint states that he was convicted of the charge of theft of lost/mislaid property. Doc. 71 at 2. Although the Court cannot find this assertion in the amended complaint, his response to the State's Attorney Defendants' motions to dismiss states that his "guilty finding was reversed and he was adjudicated 'not guilty'" on December 2, 2016. Doc. 69 at 5.

4

Fourth Amendment and is time-barred because it accrued on October 2, 2016 and the statute of limitations ran on October 2, 2018, months before Barnett filed his original complaint.[4] Although the Court agrees that Barnett's claim arises under the Fourth Amendment, because Barnett could not pursue his wrongful detention claim until his acquittal, the Court finds that he filed this claim within the statute of limitations.

### A. Fourth Amendment Grounding of the Fabrication of Evidence Claim

Although Barnett purports to base his claim in the Fourteenth Amendment, he cannot successfully raise a Fourteenth Amendment due process fabrication of evidence claim. While it is beyond doubt that "a police officer who manufactures false evidence against a criminal defendant violates due process," that violation becomes actionable only "*if* that evidence is later used to deprive the defendant of her liberty in some way." *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012) (emphasis added); *accord Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) ("A deprivation of liberty is a necessary element of a due-process claim premised on allegations of evidence fabrication"). Barnett was only subject to pretrial detention and bond conditions; he does not allege any post-trial deprivation of liberty. *Cairel v. Alderden*, 821 F.3d 823, 831 (7th Cir. 2016) ("The need to appear in court and attend trial does not constitute . . . a deprivation [of liberty]."); *Saunders-El v. Rohde*, 778 F.3d 556, 561 (7th Cir. 2015) (a plaintiff who had been released on bond and was acquitted at trial could not raise a due process claim for fabrication of evidence). As the Seventh Circuit recently clarified, "all § 1983 claims for wrongful pretrial detention—whether based on fabricated evidence or some other defect—sound in the Fourth Amendment." *Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019) (citing

---

[4] Though the City Defendants analyze Barnett's claim in part as one for false arrest, Barnett denies asserting a false arrest claim and the Court has already found any false arrest claim to be time-barred. Doc. 29 at 2.

*Manuel v. City of Joliet* ("*Manuel I*"), --- U.S. ----, 137 S. Ct. 911, 916 (2017); *Manuel v. City of Joliet* ("*Manuel II*"), 903 F.3d 667, 670 (7th Cir. 2018)).[5]

To state a claim for fabrication of evidence sounding in the Fourth Amendment, Barnett must allege that Kulisek knowingly, intentionally, or with reckless disregard for the truth made false statements that were necessary to the probable cause determination. *Id.* at 477 (citing *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010)). Barnett alleges that Kulisek made false statements in the police report and that those statements formed the basis for the probable cause determination. Therefore, Barnett has sufficiently pleaded a Fourth Amendment fabrication of evidence claim against Kulisek.

### B. Statute of Limitations

This does not end the inquiry, however, because the City Defendants argue that the statute of limitations bars Barnett's wrongful detention claim based on the fabrication of evidence. The statute of limitations is an affirmative defense that the plaintiff need not anticipate in the complaint. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). But that is not the case where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint reveals that an action is untimely under the governing statute of limitations." *Id.*; *see also Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (considering statute of limitations defense on motion to dismiss where relevant dates were set forth in the complaint). Section 1983 does not itself have a statute of limitations but instead uses

---

[5] *Lewis* is not inconsistent with *McDonough v. Smith*, --- U.S. ----, 139 S. Ct. 2149 (2019), on which Barnett relies to argue he has stated a Fourteenth Amendment claim. In *McDonough*, the parties did not dispute that McDonough had suffered a liberty deprivation due to the restraints on his travel as part of his pretrial bond conditions, and the Court declined to decide whether that framing, embraced by the Second Circuit, was correct. *McDonough*, 139 S. Ct. at 2156 n.4. Therefore, contrary to Barnett's argument, the Second Circuit's interpretation of McDonough's bond conditions as a liberty deprivation does not control; *Lewis*, in which the Seventh Circuit made clear that Barnett's claim arises only under the Fourth Amendment, does. *Lewis*, 914 F.3d at 479.

6

the limitations period for similar claims in the state where the claims arose, which for Illinois is two years. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008) (citing 735 Ill. Comp. Stat. 5/13-202). While state law determines the duration of the statute of limitations for a § 1983 claim, federal law governs the accrual date. *Wallace*, 549 U.S. at 388.

A Fourth Amendment claim for wrongful pretrial detention accrues when the wrongful detention ends. *Manuel II*, 903 F.3d at 670. Because Barnett has alleged that false statements provided the basis for the probable cause determination against him, he has alleged that his detention remained wrongful even after he was formally charged. *Manuel I*, 137 S. Ct. at 918 (detention "predicated solely on a police officer's false statements" violates the Fourth Amendment, even after the onset of legal process). In such cases, wrongful detention claims based on falsified probable cause accrue upon the detainee's release. *Sanders v. St. Joseph Cty.*, 806 F. App'x 481, 484 (7th Cir. 2020); *Manuel II*, 903 F.3d at 670.

Barnett's amended complaint reveals that he was released from custody on October 1, 2016, more than two years before he filed his complaint. But the Court must also consider the effect of the ongoing criminal proceedings on Barnett's ability to bring suit on his wrongful detention claim. Under *Heck v. Humphrey*, Barnett could not bring a § 1983 suit concerning his confinement until the criminal proceedings terminated in his favor if the suit would "necessarily imply" the invalidity of an outstanding criminal conviction or sentence. 512 U.S. 477, 487 (1994). In *McDonough*, the Supreme Court emphasized that the *Heck* bar extends to a fabrication of evidence claim based on evidence used to secure an indictment given that such a claim "directly challenges—and thus necessarily threatens to impugn—the prosecution itself." 139 S. Ct. at 2159. Although *McDonough* concerned a Fourteenth Amendment fabrication of

evidence claim, rather than one based in the Fourth Amendment, its application of *Heck* applies to Barnett's Fourth Amendment claim. *See Sanders*, 806 F. App'x at 484 n.2 ("If, however, a conclusion that Sanders's confinement was unconstitutional would imply the invalidity of an ongoing criminal proceeding or a prior criminal conviction, then *Heck* would continue to bar Sanders's claim after his release and until either those proceedings terminated in his favor or the conviction was vacated."); *Savory v. Cannon*, 947 F.3d 409, 414 (7th Cir. 2020).

    Here, Barnett alleges that the Chicago Police "had no information to lead them to believe that Barnett had committed a crime," aside from the false assertions in the arrest report. Doc. 45 ¶ 39. Barnett's wrongful detention claim "centers on evidence used to secure an indictment and at a criminal trial" and so "directly challenges—and thus necessarily threatens to impugn—the prosecution itself." *McDonough*, 139 S. Ct. at 2159; *Culp v. Flores*, No. 17 C 252, 2020 WL 1874075, at *2–3 (N.D. Ill. Apr. 15, 2020) (accrual date for unlawful detention claim based on fabrication of evidence governed by *Heck*). This means that the claim did not accrue until Barnett's acquittal on December 2, 2016, making the filing of his complaint on December 3, 2018 timely.[6] *See Moore v. City of Chicago*, No. 19 CV 3902, 2020 WL 3077565, at *4 (N.D. Ill. June 10, 2020) (unlawful pretrial detention claim based on fabricated evidence did not accrue until the plaintiff's sentence was vacated and charges were dismissed); *Hill v. Cook Cty.*, No. 18-cv-08228, 2020 WL 2836773, at *11 (N.D. Ill. May 31, 2020) (same). Therefore, the statute of limitations does not bar Barnett's wrongful detention claim based on fabrication of evidence.[7]

---

[6] Per Federal Rule of Civil Procedure 6(a)(1)(C), when computing time, the Court must "include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." December 2, 2018 fell on a Sunday; therefore, December 3, 2018 was the last day for Barnett to file within the statute of limitations.

[7] Because *Heck* controls the accrual date, the Court need not address the open question of whether bond conditions such as pretrial travel restrictions amount to a Fourth Amendment seizure. *See Mitchell v. City*

## II. *Monell* Liability (Count II)

With respect to Barnett's claim against the City, the City Defendants first argue that such a claim fails because the underlying claim against Kulisek is time-barred. But because the Court has concluded that Barnett filed his wrongful detention claim within the statute of limitations, this argument does not warrant dismissal. Alternatively, the City Defendants contend that Barnett has not adequately alleged a *Monell* claim against the City.

Although Barnett cannot hold the City liable based on *respondeat superior*, *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015), the City may be held liable under § 1983 for deliberate indifference pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978). To state a *Monell* claim, Barnett must allege (1) an express policy that, when enforced, causes a constitutional violation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). To adequately allege a *Monell* policy or practice claim, Barnett must "plead[ ] factual content that allows the Court to draw the reasonable inference that [the County] maintained a policy, custom or practice" that contributed to the alleged violation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678); *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (the policy or practice "must be the direct cause or moving force behind the constitutional violation").

The City Defendants argue that Barnett may not rely only on his personal experience as the basis for his *Monell* claim. But the Seventh Circuit has indicated that at the motion to

---

*of Elgin*, 912 F.3d 1012, 1017 (7th Cir. 2019) (noting but not resolving the question of whether pretrial release conditions amount to a seizure).

dismiss stage, a plaintiff may do just this instead of having to plead examples of other individuals' experiences. *See White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (plaintiff "was not required to identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process"); *Williams v. City of Chicago*, No. 16-cv-8271, 2017 WL 3169065, at *8–9 (N.D. Ill. July 26, 2017) ("Post-*White* courts analyzing Monell claims . . . have 'scotched motions to dismiss' premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff." (collecting cases)). At this stage, Barnett's allegations that the City has a practice of using fabricated evidence in police reports, as evidenced by his experience with Kulisek and other officers who stood by without intervening, suffice at the pleading stage to state a *Monell* claim against the City. *See Barwicks v. Dart*, No. 14-cv-8791, 2016 WL 3418570, at *4 (N.D. Ill. June 22, 2016) (at summary judgment, a single incident cannot establish a *Monell* claim, but a plaintiff "need only allege a pattern or practice, not put forth a full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists" at the pleading stage).

### III. Claims against the State's Attorney Defendants (Counts III and IV)

In Counts III and IV, Barnett brings § 1983 claims against the State's Attorney Defendants in both their personal and official capacities, claiming they prosecuted him with fabricated evidence and without probable cause.[8] The State's Attorney Defendants seek dismissal of these claims, arguing that they are barred by absolute prosecutorial immunity, Eleventh Amendment immunity, and the statute of limitations. They also contend that Barnett has failed to sufficiently allege a constitutional violation against them.

---

[8] Alvarez argues that Barnett asserts a claim against her only in her official capacity, not in her personal capacity. The Court assumes, *arguendo*, that Barnett asserts claims against Alvarez in both her personal and official capacities.

Initially, as the Court noted when addressing Barnett's initial complaint, "there is no such thing as a constitutional right not to be prosecuted without probable cause." *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013). Therefore, Barnett cannot base his claims against the State's Attorney Defendants solely on his alleged prosecution without probable cause but must allege a separate violation of a constitutional right. *Id.* at 592. As discussed above, Barnett has not alleged a post-trial deprivation of liberty and, thus, has not stated a Fourteenth Amendment due process claim. *Cairel*, 821 F.3d at 831. Although this alone warrants dismissal of his claims against the State's Attorney Defendants, the Court further addresses the State's Attorney Defendants' immunity arguments because the existence of immunity warrants the dismissal with prejudice of the claims against the State's Attorney Defendants.[9]

### A.   Individual Capacity Claims

The Court first addresses the claims brought against the State's Attorney Defendants in their individual capacities. Barnett does not allege that either Alvarez or Foxx personally prosecuted him but rather seeks to hold them liable for the conduct of ASA Griffin-Johnson. But the State's Attorney Defendants cannot be held liable under § 1983 on a theory of *respondeat superior*. *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). In order for a supervisor to be found liable in their individual capacity under § 1983, they "must know about the [unconstitutional] conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id.* The amended complaint does not allege that Alvarez or Foxx had personal knowledge of ASA Griffin-Johnson's conduct in prosecuting Barnett with improper evidence. Nor does it allow the inference that the State's Attorney Defendants turned a blind eye to avoid acquiring that knowledge. Because Barnett does not allege that the State's Attorney

---

[9] Because the Court dismisses the claims against the State's Attorney Defendants on other grounds, the Court need not address whether the statute of limitations also bars these claims.

Defendants had knowledge of ASA Griffin-Johnson's allegedly unconstitutional conduct, Barnett does not state a cognizable § 1983 claim against them in their individual capacities.

Further, even if Barnett had alleged their personal involvement, absolute prosecutorial immunity would shield the State's Attorney Defendants from his claims. The decision to prosecute is "an integral part of the judicial process" and is therefore protected by absolute immunity. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."); *Diestelhorst v. Ryan*, 20 F. App'x 544, 546 (7th Cir. 2001) ("[A]bsolute immunity shields a prosecutor 'even if he initiates charges maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence.'" (quoting *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986))). In *Van de Kamp v. Goldstein*, the Supreme Court extended absolute immunity to supervisors when their managerial decisions are directly connected with a prosecutor's basic trial advocacy duties, including initiating a prosecution. 555 U.S. 335, 346 (2009); *see also Andrews v. Burge*, 660 F. Supp. 2d 868, 877 (N.D. Ill. 2009) ("Decisions about what training to provide come under the immunity umbrella."). Barnett does not allege that ASA Griffin-Johnson's actions with respect to his case were "investigative and unrelated to the preparation and initiation of judicial proceedings," which would defeat a claim of absolute immunity. *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003). Therefore, the State's Attorney Defendants have absolute immunity from liability in their individual capacities based on any involvement they may have had in Barnett's prosecution.

**B.      Official Capacity Claims**

With respect to his official capacity claims, Barnett explains in his response to the State's Attorney Defendants' motions to dismiss that he seeks to hold the State's Attorney Defendants

12

responsible for the Cook County State's Attorney's office policy of "aggressively prosecut[ing] the cases before it," a policy he claims led to his improper prosecution.[10] Doc. 69 at 5. However, the Eleventh Amendment bars suits in federal court against state officials acting in their official capacities. *Ind. Prot. & Advoc. Servs. v. Ind. Family & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010). In Illinois, Eleventh Amendment immunity extends to State's Attorneys. *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994) (citing *Ingemunson v. Hedges*, 133 Ill. 2d 364, 370 (1990)). The Eleventh Amendment bar does not apply if a state consents to be sued or if Congress has abrogated the state's immunity. *Ind. Prot. & Advoc. Servs.*, 603 F.3d at 371. The Eleventh Amendment also does not shield claims against state officials for injunctive relief because "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 155–56 (1908)). Barnett's complaint does not seek injunctive relief, nor can the Court discern any other applicable exceptions to Eleventh Amendment immunity here. *See Garcia*, 24 F.3d at 969; *Lee v. Howse*, No. 19-cv-30, 2020 WL 2468133, at *9 (N.D. Ill. May 13, 2020). Therefore, the Eleventh Amendment bars any claim against the State's Attorney Defendants in their official capacities. And because the State's Attorney Defendants are immune from suit in both their individual and official capacities, the Court dismisses the claims against them with prejudice.

---

[10] Although the inclusion of this additional basis for holding the State's Attorney Defendants liable in their official capacities in Barnett's response does not affect the Court's conclusion, the Court notes that a complaint "may not be amended by the briefs in opposition to a motion to dismiss." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012).

**IV.     Malicious Prosecution (Counts V and VI)**

Finally, the Court turns to Barnett's malicious prosecution claims against the City Defendants. The amended complaint does not specify whether the malicious prosecution claims arise under state or federal law. Regardless of the state or federal grounding of the claims, the Court finds that Barnett cannot proceed on these claims.

**A.     Federal Analysis of Claims**

As already noted, there is no free-standing theory of malicious prosecution, with Barnett instead having to "allege something else that does amount to a constitutional violation (even if he calls it malicious prosecution)." *Serino*, 735 F.3d at 593. After *Manuel II*, "when a plaintiff alleges that officials held him in custody before trial without justification, '[m]alicious prosecution is the wrong characterization. There is only a Fourth Amendment claim—the absence of probable cause that would justify the detention.'" *Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019) (quoting *Manuel II*, 903 F.3d at 670). Further, the Fourteenth Amendment cannot support Barnett's malicious prosecution claims because "the 'due process clause' does not support a constitutional tort of malicious prosecution if state law provides a parallel remedy." *Johnson v. Saville*, 575 F.3d 656, 663 (7th Cir. 2009) (citing *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001), *abrogated on other grounds by Manuel I*, 137 S. Ct. 911). Illinois provides a state law claim for malicious prosecution. *See Williams v. City of Chicago*, 733 F.3d 749, 759 (7th Cir. 2013) (outlining the elements of a malicious prosecution claim under Illinois law). Therefore, Barnett cannot pursue a federal malicious prosecution claim.

B.   State Analysis of Claims

The City Defendants argue that, to the extent Barnett's malicious prosecution claims are based in state law, the statute of limitations bars those claims.[11] The Illinois Local Governmental and Governmental Employees Tort Immunity Act provides that a one-year statute of limitations applies to Barnett's state law malicious prosecution claim. 745 Ill. Comp. Stat. 10/8-101(a); *Shelton v. Wright*, No. 09 C 6413, 2011 WL 856811, at *3 (N.D. Ill. Mar. 9, 2011)). Barnett's claims for malicious prosecution accrued when his criminal case terminated in his favor. *Shelton*, 2011 WL 856811, at *3. Barnett filed this suit on December 3, 2018, more than one year after his acquittal on December 2, 2016. Therefore, to the extent Barnett asserts state law malicious prosecution claims against the City Defendants, the statute of limitations bars these claims.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the City Defendants' motion to dismiss [47]. The Court grants the State's Attorney Defendants' motions to dismiss [52, 64]. The Court dismisses Counts III, IV, V, and VI with prejudice.

Dated: July 28, 2020

SARA L. ELLIS
United States District Judge

---

[11] The City Defendants alternatively ask the Court to decline to exercise supplemental jurisdiction over the state law claims. But because Barnett's federal claims against the City Defendants remain viable, the Court finds this request moot.