UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HARRY BARNETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18 C 7946 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| CITY OF CHICAGO, a Municipal ) | |
| Corporation, and CHICAGO POLICE ) | |
| OFFICER ALEXANDER KULISEK, ) | |
| an individual, and in his official capacity, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

After Chicago Police Department ("CPD") officers arrested Harry Barnett for theft of lost/mislaid property and a judge overturned his conviction, Barnett filed this lawsuit against CPD officer Alexander Kulisek and the City of Chicago. In his amended complaint, Barnett alleged that Kulisek and the City violated 42 U.S.C. § 1983 by fabricating evidence against him in order to effectuate an arrest and prosecution (Counts I and II) and that they maliciously prosecuted him in violation of § 1983 and/or Illinois state law (Counts V and VI).[1] After ruling on Defendants' motion to dismiss and motion for reconsideration and considering legal clarifications from the Seventh Circuit and the Supreme Court, the Court allowed Counts I and II to proceed. *See* Doc. 74; Doc. 128; Doc. 142; Doc. 151. Defendants now move for summary judgment on Counts I and II. Because probable cause existed to detain Barnett, the Court grants Defendants' motion for summary judgment on Barnett's fabrication of evidence claim. Because Barnett has failed to establish an underlying constitutional violation, the Court also dismisses his *Monell* claim against the City.

---

[1] Barnett also included allegations against former and current Cook County State's Attorneys Anita Alvarez and Kimberly Foxx, but the Court dismissed those claims (Counts III and IV). Doc. 74.

## BACKGROUND[2]

In 2016, Kulisek owned a Yamahopper scooter that he stored in a shed on his parents' property in McHenry County, Illinois. He made multiple modifications to his scooter, including using a fuel valve normally reserved for lawn mowers, installing a clear fuel line, and removing plastic fairings. On September 30, 2016, his parents' property manager reported the scooter as missing, possibly as a result of a "suspicious incident." Doc. 158 ¶ 3. Kulisek believes that his father informed him about his missing scooter.

Around the same time, Barnett, who resides primarily in Florida, was visiting Chicago. On or around September 28, 2016, Barnett's former employee, Daniel Santos, reached out to Barnett hoping to see him during Barnett's stay in Chicago. Barnett had not spoken to Santos for at least six months prior to his outreach. Santos ultimately visited Barnett in the wood shop that Barnett rented, bringing a scooter with him. When Barnett asked where Santos acquired the scooter, he responded that he did so via a "cleanout"—where a person moves out of a home or apartment and they or their landlord want to clean things out—but did not provide an address. Doc. 158 ¶ 11 & n.1. Knowing that Barnett had previously bought out a scooter store, Santos asked him whether he wanted to purchase the scooter. Santos indicated that he "really wanted to get [the scooter] out [of his vehicle]" and asked for one hundred dollars. Doc. 1581-1 at 104.

---

[2] The Court derives the facts in this section from the parties' Joint Statement of Undisputed Facts, Barnett's Statement of Additional Facts, and the Defendants' objections thereto. The Court notes that some of the facts contained in Barnett's Statement duplicate those already in the parties' Joint Statement. Moreover, Defendants do not dispute many of the statements included in Barnett's Statement and so the parties should have included those in the Joint Statement. Although Barnett has therefore run afoul of the Court's standing order on summary judgment practice, the Court nonetheless considers the statements and responses thereto, but only to the extent appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment. The Court will not consider statements unsupported by the record—for example, that Kulisek lacked title to the scooter and purchased and sold or gave away the scooter without title. *Compare* Doc. 172 at 13 ("Kulisek did not possess a title, and purchased *and* sold/gave away the scooter without a title."), *with* Doc. 158-1 at 25 (Kulisek's deposition testimony wherein he states that he does not recall whether he acquired title when he received the scooter from a friend). The Court construes all facts in the light most favorable to Barnett, the non-movant.

Barnett haggled over the price with Santos because Barnett did not feel the scooter had much worth if he had to go through the trouble of subsequently posting the scooter on Craigslist and ended up purchasing the scooter for sixty dollars.

After purchasing the scooter, Barnett took photographs of it and posted an advertisement on Craigslist seeking one hundred seventy-five dollars. The advertisement included a description stating that the scooter had no title. Barnett testified that when a scooter lacks title, it makes it less valuable than when it has a title. Because of this, when Barnett previously purchased scooters via his purchase of the scooter store, he attempted to run the scooters' VIN numbers with the Secretary of State's office in an effort to determine their prior owners before posting the scooters on Craigslist. Barnett testified that in the past, the Secretary of State's office declined to provide him with information or assist him in conducting his searches. Other CPD officers also testified that verifying VIN numbers may help determine ownership of a vehicle. Kulisek testified that when he previously purchased used vehicles that lacked title, he took steps to verify their chain of ownership, including contacting the local police department and verifying VIN numbers. Lieutenant Juan Rios testified that one of the "main way[s]" to determine ownership of a vehicle is through the use of a VIN number. Doc. 158 ¶ 24. Here, Barnett did not run a VIN search for the scooter or attempt to identify any prior owners at the time he acquired the scooter.[3]

Kulisek saw Barnett's scooter advertisement on Craigslist and determined that the scooter "most likely" belonged to him. *Id.* ¶ 27. On or around September 30, 2016, Kulisek called Barnett to inquire about purchasing the scooter. Barnett informed Kulisek that he had possessed the scooter for two or three days, and Kulisek and Barnett agreed to meet that night so Kulisek

---

[3] Barnett ran the scooter's VIN number after his acquittal, and the Secretary of State record indicated that no title information existed.

could see the scooter. Kulisek and his partner that day, Officer Michael A. Perricone, arrived at Barnett's shop in plain clothes. Barnett brought the scooter out for Kulisek to see and Kulisek confirmed that the scooter appeared to be his based on the modifications he made to it. Seconds later, Kulisek signaled to a team of officers and they arrested Barnett at approximately 8:49 p.m.

Officers completed two reports after the arrest—an arrest report and an original case incident report. The original case incident report lists Kulisek as the reporting officer. The arrest report, which contains a narrative with which Barnett takes issue, lists the arresting officer as Perricone. Perricone testified that he "likely wrote" the report. *Id.* ¶ 41. Kulisek testified that he did not help "the [arresting] officer" write the arrest report. *Id.* ¶ 54. At his deposition, Barnett made clear that his fabrication of evidence claim arises from the narrative portion of his arrest report. The report states, in relevant part:

> [Barnett] was arrested in that he was found to be in possession of a 1987 Yamaha moped, that was taken in a burglary documented under McHenry County Sheriff Report #16-32176 and furthermore, [Barnett] attempted to sell said property to A/O's working in covert capacity. Once the identity of the stolen property was verified, [Barnett] was taken into custody and transported to 015th District for further processing. [Barnett] made no attempt to identify the owner and failed to take reasonable measures to restore the property to the owner, intending to deprive the owner permanently of the use/benefit of the property.

*Id.* ¶ 40. Rios testified that the final sentence of the incident narrative reflected the charge of theft of lost/mislaid property and that "it [is] common practice" for CPD officers to include the statutory elements of a crime in an arrest report. *Id.* ¶ 42; Doc. 158-1 at 300.

Officers formally charged Barnett with one misdemeanor of theft of lost/mislaid property pursuant to 720 Ill. Comp. Stat. 5/16-2 on September 30, 2016 and detained him until approximately 3:12 a.m. on October 1, 2016. A judge released Barnett on an I-bond that

4

required him to petition the court for permission to leave the state. In total, CPD detained Barnett for approximately six hours between the time of his arrest and his release on bond.

On October 5, 2016, a judge denied Barnett's request to return to Florida. The Circuit Court of Cook County held a bench trial on October 12, 2016. *See People v. Barnett*, No. 16-MC1-210156 (Cook Cnty. Cir. Ct. Dec. 2, 2016); Doc. 158-1 at 323–72. The court found Barnett guilty of the crime of theft of lost/mislaid property. But on December 2, the court overturned Barnett's conviction on the basis that a person could not be convicted of the crime of theft/mislaid property when the property at issue was stolen, rather than lost or mislaid.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719

F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

Barnett brings his fabrication of evidence claim against Kulisek under 42 U.S.C. § 1983, which requires Barnett to show that Kulisek, "acting under color of state law, deprived him of a right secured by the Constitution or federal law." *Gardley v. City of Chicago*, No. 20 C 5149, 2022 WL 6757610, at *4 (N.D. Ill. Oct. 11, 2022) (citing *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006)). Barnett alleges that Kulisek fabricated evidence against him in order to manufacture probable cause and arrest him. Because Barnett's fabrication of evidence claim relates to his "arrest[] and prosecut[ion]," Doc. 45 ¶ 44, it "sounds in the Fourth Amendment right to be free from seizure without probable cause," *Patrick v. City of Chicago*, 974 F.3d 824, 834 (7th Cir. 2020) (citing *Lewis v. City of Chicago*, 914 F.3d 472, 476–78 (7th Cir. 2019)) ("A claim for false arrest or pretrial detention based on fabricated evidence sounds in the Fourth Amendment . . . . If fabricated evidence is later used at trial to obtain a conviction, the accused may have suffered a violation of his due-process right to a fair trial.").[4]

In support of Defendants' motion for summary judgment on Barnett's claim against Kulisek, they contend that (1) probable cause existed to arrest and detain Barnett for theft of lost/mislaid property and for theft, (2) Barnett's bond conditions did not amount to a "seizure"

---

[4] Although one could read Barnett's claim as alleging false arrest, Barnett has denied asserting a false arrest claim and the Court previously found any false arrest claim to be time barred. Doc. 74 at 5 n.4 (citing Doc. 29 at 2).

under the Fourth Amendment,[5] (3) Kulisek cannot be held liable under § 1983 because he did not author the arrest report that contains allegedly fabricated information, (4) recitation of the statutory elements of an offense does not amount to a "false statement" or "evidence" that can give rise to a fabrication of evidence claim, and (5) qualified immunity protects Kulisek. As to Barnett's *Monell* claim against the City, Defendants assert that the Court should dismiss that claim because Barnett has failed to establish an underlying constitutional violation by Kulisek.

I.  **Fabrication of Evidence**

To state a claim for fabrication of evidence sounding in the Fourth Amendment, Barnett must allege that Kulisek knowingly, intentionally, or with reckless disregard for the truth made false statements that were necessary to the probable cause determination. *See Lewis*, 914 F.3d at 477 (citing *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010)). In other words, Barnett must show that Kulisek determined he had probable cause "based on knowingly false evidence." *Dukes v. Washburn*, 600 F. Supp. 3d 885, 899 (N.D. Ill. 2022). "Fabricated evidence 'is made

---

[5] Defendants contend that the "seizure" analysis for this claim should focus on Barnett's inability to leave the state subject to his bond conditions because his brief detention upon his arrest and before the start of the legal process implicates a false arrest claim, and not a pretrial detention claim. In his response to Defendants' motion, Barnett does not appear to take issue with the relevant seizure, but instead asserts that whether or when a seizure occurred was relevant only to the Court's already made decision involving statute of limitations arguments, and not to resolving Defendants' summary judgment motion. However, Barnett cannot establish his alleged Fourth Amendment violation without a seizure, and so whether he suffered a seizure is integral to his claim. *See Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) ("The Fourth Amendment protects [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." (internal quotation marks omitted) (alteration in original)); *Ree v. City of Chicago*, No. 22 CV 4284, 2023 WL 3123761, at *3 (N.D. Ill. Apr. 27, 2023) ("Although the Seventh Circuit has not provided elements for a Fourth Amendment unlawful pretrial detention claim, [t]he consensus among district courts is that a plaintiff must show that the defendants (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in the plaintiff's favor." (alteration in original) (citation omitted) (internal quotation marks omitted)). Here, the Court need not decide whether the judge's denial of his request to leave the state constitutes a seizure—an unsettled question of law, *see Smith v. City of Chicago*, 3 F.4th 332, 341 (7th Cir. 2021) (distinguishing between a plaintiff who was actually "denied permission to travel" with one who was solely subject to travel restrictions, without deciding whether the latter would constitute a seizure), *cert. granted, judgment vacated sub nom. Smith v. City of Chicago, Illinois*, 212 L. Ed. 2d 576 (2022)—because even if it did, Kulisek had probable cause to believe Barnett committed a crime.

7

up; it is invariably false.'" *Boyd v. City of Chicago*, 225 F. Supp. 3d 708, 726 (N.D. Ill. 2016) (quoting *Fields v. Wharrie*, 740 F.3d 1107, 1110 (7th Cir. 2014)).

Barnett grounds his fabrication of evidence claim on his arrest report. *See* Doc. 158-1 at 57:12-24, 58:1-6, 60:3-15, 63:16-20. Specifically, Barnett challenges the following statements that appear in the incident narrative section under bolded language that says "[t]he facts for probable cause to arrest AND to substantiate the charges include, but are not limited to, the following": "[s]ubject made no attempt to identify the owner . . . [a]nd failed to take reasonable measures to restore the property to the owner[,] . . . [i]ntending to deprive the owner permanently [of] the use/benefit of the property." *Id.* at 63:16-71:4; Doc. 45 ¶ 39 ("Kulisek and the [CPD] placed fabricated evidence in the police report when they included . . . 'Subject made no attempt to identify the owner and failed to take reasonable measures to restore the property to the owner, intending to deprive the owner permanently of the use/benefit of the property' . . . . These 'facts' are actually a verbatim recitation of 720 ILCS 5/16-2."); Doc. 158-1 at 229. As Barnett identified in his amended complaint, *see* Doc. 45 ¶ 39, these statements reflect the elements of the crime of theft of lost or mislaid property, *see* 720 Ill. Comp. Stat. 5/16-2. The language in the incident narrative—elements of the charged offense—differs from the sort of specific facts that typically give rise to a fabrication of evidence claim. *See, e.g.*, *Baker v. City of Chicago*, 483 F. Supp. 3d 543, 553 (N.D. Ill. 2020) (plaintiffs sufficiently pleaded a claim for fabrication of evidence where they alleged that defendants falsely stated in a police report that they found plaintiffs in possession of drugs); *Heidelberg v. Manias*, 503 F. Supp. 3d 758, 786 (C.D. Ill. 2020) (allowing fabrication of evidence claim to proceed where the plaintiff alleged that the defendants prepared a lineup report wherein they falsely stated that individuals identified the plaintiff in a lineup); *Banks v. City of Chicago*, No. 15-CV-7646, 2017 WL 8186994, at *7 (N.D.

8

Ill. Dec. 15, 2017) (declining to grant defendants' summary judgment motion on plaintiff's fabrication of evidence claim where defendants falsely indicated in a police report that they observed plaintiff transferring drugs). And these statements do not constitute evidence, which "tends to prove or disprove the existence of an alleged fact." *Kinsella v. Ind. Univ. Health Care Assocs., Inc.*, No. 116CV02252JMSMPB, 2019 WL 3281630, at *3 (S.D. Ind. July 1, 2019) (citing Black's Law Dictionary (11th ed. 2019)), *report and recommendation adopted*, No. 116CV02252JMSMPB, 2019 WL 3253691 (S.D. Ind. July 19, 2019). The Court questions whether these statements—which appear more like legal conclusions intended to reflect the elements of the crime—constitute fabricated facts, but even assuming that they do, Barnett can only prevail on his fabrication of evidence claim if the fabricated evidence was material to a probable cause determination.[6]

## II. Probable Cause

Even assuming Kulisek knew of or participated in the fabrication of statements in Barnett's arrest report, Barnett cannot prevail because the statements are not necessary for a finding of probable cause. *See Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 881 (7th Cir. 2012) ("[E]ven if Turner had fabricated evidence, that is not enough; rather, the falsifications must be material to the finding of probable cause." (citation omitted) (internal quotation marks

---

[6] Because Barnett brings his claim under § 1983, he must also show that Kulisek had personal involvement in the purportedly unlawful conduct. *Johnson v. Rimmer*, 936 F.3d 695, 710–11 (7th Cir. 2019). Here, although evidence suggests that Kulisek did not author the arrest report, the record also indicates that he participated in Barnett's arrest and his interview at the police station. Kulisek also admitted in his brief in support of his summary judgment motion that he "may have contributed to the substance of the Arrest Report," Doc. 159 at 5, although the Court notes that the deposition testimony Kulisek cites does not directly support this latter assertion. Thus, a question of fact exists regarding Kulisek's involvement in crafting the arrest report, even if he did not directly author it. *See Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017) ("[T]he defendant need not have participated directly in the deprivation of the plaintiff's constitutional right to be held liable, [but] he or she must . . . have know[n] about the conduct, facilitate[d] it, approve[d] it, condone[d] it, or turne[d] a blind eye for fear of what they might see." (second, third, fourth, fifth, and sixth alterations in original) (citation omitted) (internal quotation marks omitted)).

omitted)).  Probable cause, a "low bar," *Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021), "exists if . . . the facts and circumstances within the defendant's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense," *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 622 (7th Cir. 2010) (citation omitted) (internal quotation marks omitted).  A court does not evaluate probable cause "with the benefit of hindsight . . . [or] on the facts as perceived by an omniscient observer, but on the facts as they appeared to a reasonable person in the defendant's position, even if that reasonable belief turned out to be incorrect." *Stokes*, 599 F.3d at 622; *see also Fleming*, 674 F.3d at 879 ("[Probable cause] standard does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable." (citation omitted) (internal quotation marks omitted)).  "While an officer may not close his or her eyes to clearly exculpatory facts," *Stokes*, 599 F.3d at 624, probable cause "for [an] initial arrest" can carry over to "a claim for unreasonable pretrial detention or release on bond," *Mayo v. LaSalle Cnty.*, No. 18 CV 01342, 2019 WL 3202809, at *7 (N.D. Ill. July 15, 2019).

Courts determine the existence of probable cause based on "the elements of the underlying criminal offense." *George v. City of Chicago*, No. 1:20-CV-06911, 2022 WL 832675, at *5 (N.D. Ill. Mar. 21, 2022) (citing *Stokes*, 599 F.3d at 622).  After CPD officers arrested Barnett, they charged him with the crime of theft of lost or mislaid property, which occurs where a person "obtains control over the property and: (a) [k]nows or learns the identity of the owner or knows, or is aware of, or learns of a reasonable method of identifying the owner, and (b) [f]ails to take reasonable measures to restore the property to the owner, and (c) [i]ntends to deprive the owner permanently of the use or benefit of the property." 720 Ill. Comp. Stat. 5/16-2.  The parties focus their arguments on whether Kulisek had reason to believe Barnett

10

satisfied the three elements of the crime, but they spend almost no time on the issue of whether Kulisek had probable cause to believe the property was "lost" or "mislaid." The record suggests that CPD officers believed that someone stole Kulisek's scooter. *See, e.g.*, Doc. 158-1 at 229 ("The above was arrested in that he was found to be in possession of a 1987 Yamaha moped, that was taken in a burglary[.]"). The parties do not point the Court to any authority that suggests a person may be convicted of the crime of theft of lost/mislaid property where the underlying property was stolen, rather than lost or mislaid, and the state court's decision to overturn Barnett's conviction suggests the contrary. Doc. 158-1 at 378–99.

The Court need not decide whether probable cause existed to detain Barnett based solely on the charged offense, however; an arrest or pretrial detention "is reasonable under the Fourth Amendment so long as there is probable cause to believe that *some* criminal offense has been or is being committed, even if it is not the crime with which the officers initially charge the suspect." *Jackson v. Parker*, 627 F.3d 634, 638–39 (7th Cir. 2010) (affirming grant of summary judgment for officer-defendant on plaintiff's false arrest claim where officer had probable cause to arrest the plaintiff for driving a prohibited vehicle, even though officer never charged plaintiff for committing that crime) (citation omitted) (internal quotation marks omitted); *see also Lietzow v. Vill. of Huntley*, No. 17 CV 05291, 2023 WL 2954989, at *16 (N.D. Ill. Apr. 14, 2023) ("[P]robable cause to detain an individual on one charge defeats a § 1983 claim for illegal pretrial detention regardless of whether there is probable cause for any additional charges."); *Haynes v. City of Chicago*, No. 21 C 4643, 2022 WL 1016392, at *1, 3 (N.D. Ill. Apr. 5, 2022) (dismissing § 1983 claim premised on officers charging the plaintiff with knowingly possessing a firearm where the "[o]fficers unquestionably had probable cause to arrest and detain Haynes

11

for driving on a suspended license, defeating his unlawful pretrial detention claim").[7] Defendants contend that even if probable cause did not exist to detain Barnett for theft of lost/mislaid property, probable cause existed for the crime of theft.

Under Illinois law, theft can occur when a person "obtains control over stolen property knowing the property to have been stolen or under such circumstances as would reasonably induce . . . her to believe that the property was stolen." 720 Ill. Comp. Stat. 5/16-1(a)(4). The Court evaluates whether the "circumstances should lead the person to know the property was stolen . . . from the perspective of an ordinary person." *Tenorio v. Harris*, 370 F. Supp. 3d 863, 868 (N.D. Ill. 2019). Even viewing the evidence in Barnett's favor, the undisputed facts demonstrate that Kulisek had probable cause to believe that the scooter was stolen. Kulisek's parents' property manager reported the scooter as missing under "suspicious" circumstances. Doc. 158-1 at 272. The missing scooter had specific modifications, including a clear fuel line, lawnmower fuel valve, and lack of plastic fairing. Shortly after its disappearance, Kulisek viewed a scooter on Craigslist that appeared to have the same modifications and then verified the same in person. Based on these undisputed facts, Kulisek reasonably believed that the scooter in Barnett's possession was the one stolen from him. *See Tenorio*, 370 F. Supp. 3d at 871 (officer reasonably believed that tire rims he found at the plaintiff's shop were stolen where the officer

---

[7] Barnett argues that for Defendants' theory to succeed, CPD would have needed to charge Barnett with the crime for which they had probable cause to arrest and detain him—here, theft. Barnett does not cite to any authority in support of this argument. To the contrary, it appears that a person need not be charged with the crime for which officers had probable cause to arrest. *See Jackson*, 627 F.3d at 635 ("The [district] court correctly determined that a finding of probable cause [to arrest the plaintiff for driving a prohibited vehicle] bars Jackson's false arrest claim even if Parker did not have probable cause to arrest Jackson for a DUI and even though Jackson was not ultimately charged with driving a prohibited vehicle."); *Haynes*, 2022 WL 1016392, at *1–3 (finding that officers had probable cause to arrest and detain plaintiff for driving on a suspended license, even though they only charged him with knowing possession of a firearm).

had previously seen pictures of the rims reported stolen and they matched those in plaintiff's shop).

Kulisek also reasonably believed that Barnett bought the scooter under circumstances that should have alerted him to the fact that the scooter was stolen. Based on an interview with Barnett at the station, Kulisek knew, at the time of Barnett's brief detention, that the scooter lacked title and Barnett had no receipt or bill of sale from Santos.[8] Although a closer call, a person faced with these facts could reasonably believe that Barnett knew or should have known the property was stolen, even if he did not in fact know. *See Zappa v. Gonzalez*, 819 F.3d 1002, 1005 (7th Cir. 2016) ("Probable cause does not require legal certainty, nor does it demand that all the facts in the officer's possession point in only one direction."); *Stokes*, 599 F.3d at 622–23 ("To form a belief of probable cause, an arresting officer is not required . . . to act as a judge or jury to determine whether a person's conduct satisfies all of the essential elements of a particular statute."); *Tenorio*, 370 F. Supp. 3d at 872 (finding that the officer had probable cause to believe that the plaintiff bought tires under circumstances that should have induced her to know they were stolen based on their low price—even though officer acknowledged he had "no information tending to indicate that [the plaintiff] knew that what she was buying were stolen goods"— because "*knowledge* that the property was stolen is not required by Illinois law").

---

[8] At some point during Barnett's case, Kulisek learned that Barnett came to acquire the scooter via a "cleanout" from an unspecified address (although the record does not indicate that officers asked Barnett for the address) and that Barnett did not undertake a VIN search to attempt to determine the scooter's previous ownership. However, the record does not make clear when Defendants learned this information. Kulisek testified that Barnett told him about the cleanout (referring to it as a "clear-out") during his interview on the night of his arrest, Doc. 158-1 at 19, and that "during questioning, [Barnett] established that [he] had not made an attempt to find out who the owner of this property was or find out any information prior to Santos acquiring it," *id.* at 18. But the parties did not include this information in their Joint Statement of Undisputed Facts and Barnett has not, to the Court's knowledge, acknowledged that he revealed this information while detained. The Court therefore treats these facts as disputed at this stage. However, if Kulisek in fact knew about the cleanout and lack of a VIN search at the time of Barnett's detention, they would serve as additional facts in support of probable cause.

Barnett's arguments against the existence of probable cause do not suffice to establish a genuine dispute over a material fact.[9] For example, Barnett spends paragraphs going through what Kulisek could or should have done before arresting him, such as have a family member call Barnett to inquire about the scooter; drive to his parents' home to confirm the disappearance of his scooter; and turn information he had about the scooter's VIN number, title, and bill of sale over to the CPD so they could conduct an investigation. Notwithstanding the propriety of these suggestions, they do not implicate whether Kulisek had probable cause to arrest and detain Barnett based on the facts before him. *See Stokes*, 599 F.3d at 622 ("Probable cause exists if, at the time of the arrest, the facts and circumstances within the defendant's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." (citation omitted) (internal quotation marks omitted)). As to Barnett's argument that probable cause can be determined only based on facts transcribed in an arrest or incident report and that the reports must contain all facts that support a finding of probable cause, he provides no support. *Cf. Garmon v. Lumpkin Cnty., Ga.*, 878 F.2d 1406, 1408 (11th Cir. 1989) (magistrate judge improperly found that probable cause existed where she based her finding solely on an affidavit that included only one statement: "to the best of [the officer's] knowledge and belief [the plaintiff] did . . . commit the offense of false report of a crime"). Instead, probable cause exists "whenever an officer or a

---

[9] Barnett raises numerous arguments in response to Defendants' motion for summary judgment. For example, Barnett discusses the impropriety of Kulisek investigating a crime to which he was the victim, accuses Kulisek of using his public position for his own gain, and accuses CPD officers of violating CPD rules and regulations. Although Barnett's arguments may have merit, the Court has focused its analysis on the issue at hand—whether Barnett has created a genuine dispute of material fact regarding whether Kulisek fabricated evidence against him to manufacture probable cause and effectuate his arrest and prosecution. Because the listed arguments, among others, do not relate to Barnett's claim, the Court does not address them.

court has enough information to warrant a prudent person to believe criminal conduct has occurred." *Young*, 987 F.3d at 644.

Barnett also claims that during his deposition, Perricone testified that CPD had no evidence for the crime of "theft." First, Barnett mischaracterizes (or misinterprets) Perricone's testimony—he stated that he did not have evidence that Barnett *stole* the scooter from Kulisek's parents' home in McHenry County, Doc. 158-1 at 248:1-12, but theft can involve more than a person physically stealing someone else's property. *See* 720 Ill. Comp. Stat. 5/16-1. Second, even if Perricone subjectively believed that CPD officers did not have probable cause to detain Barnett based on the crime of theft, the Court does not consider an officer's subjective belief in undertaking a probable cause analysis. *See Jackson*, 627 F.3d at 638 ("[T]he Fourth Amendment's focus on reasonableness dictates an objective analysis, under which, the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify the action." (citation omitted) (internal quotation marks omitted)). Here, the "facts and circumstances within the defendant's knowledge" sufficed to warrant Kulisek's belief that Barnett committed an offense. *Stokes*, 599 F.3d at 622; *see also Baier v. Pikolcz*, No. 18-CV-05603, 2021 WL 3799597, at *5 (N.D. Ill. Aug. 26, 2021) ("In the Seventh Circuit, '[i]f a case involves a question of whether probable cause existed to support an officer's actions, the case should not be permitted to go to trial if there is any reasonable basis to conclude that probable cause existed.'" (quoting *Eversole v. Steele*, 59 F.3d 710, 717–18 (7th Cir. 1995)). Because Kulisek had probable cause to detain Barnett, his fabrication of evidence claim fails.[10]

---

[10] As to Barnett's claim against the City, because the Court finds that Kulisek had probable cause to believe that Barnett committed a crime, the Court also finds that Barnett's *Monell* claim against the City

**III.     Qualified Immunity**

Even if insufficient information existed to support a determination of probable cause, Kulisek had *arguable* probable cause to believe Barnett committed an offense sufficient to establish qualified immunity. *See Treadwell v. Salgado*, No. 19 C 3179, 2022 WL 17752396, at *15 (N.D. Ill. Dec. 19, 2022) (finding that officers had probable cause and explaining that even if they did not, the officers "had arguable probable cause" to arrest the plaintiff). "Qualified immunity protects public officials from liability for damages if their actions did not violate clearly established rights of which a reasonable person would have known." *Fleming*, 674 F.3d at 879. Although a person's right to be free from arrest and detention based on fabricated evidence is clearly established, in the context of probable cause, "[q]ualified immunity tolerates reasonable mistakes." *Whitlock*, 596 F.3d at 413. Thus, an officer need only have "arguable probable cause," which "exists when a reasonable officer could *mistakenly* have believed that he had probable cause," for qualified immunity to apply. *McComas v. Brickley*, 673 F.3d 722, 725, 727 (7th Cir. 2012) ("[I]f there was arguable probable cause for an arrest for false informing, Brickley would be entitled to qualified immunity on this ground."); *see D.Z. v. Buell*, No. 12 C 7580, 2014 WL 10742634, at *4 (N.D. Ill. Feb. 26, 2014) ("In the context of a false arrest or false imprisonment allegation, . . . an officer is entitled to qualified immunity if arguable probable cause exists for detaining the plaintiff" (citation omitted) (internal quotation marks omitted)), *aff'd*, 796 F.3d 749 (7th Cir. 2015); *Baier*, 2021 WL 3799597, at *5 ("Although the constitutional right to be free from arrest without probable cause [is] well-established, a defendant officer is entitled to qualified immunity if a reasonable officer could have mistakenly believed that probable cause existed." (citation omitted) (internal quotation marks omitted)

---

fails. *See Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) ("If the plaintiff fails to prove a violation of his constitutional rights in his claim against the individual defendants, there will be no viable *Monell* claim based on the same allegations.").

(alteration in original)). Barnett bears the burden of showing that qualified immunity does not protect Kulisek. *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017) ("Although qualified immunity is an affirmative defense, the plaintiff has the burden of defeating it once the defendants raise it.").

Here, Kulisek could have reasonably, albeit mistakenly, believed that Barnett committed the crime of theft of lost/mislaid property, which does not define either "lost" or "mislaid," based on the fact that someone reported Kulisek's scooter as missing; Barnett possessed a scooter that Kulisek identified as his own; Barnett attempted to sell the scooter shortly after acquiring it; he did not have title, a receipt, or a bill of sale; and his reasonable belief, based on the information available to him, that Barnett did not attempt to find the owner despite knowing of a way to identify the owner of the vehicle. *See* 720 Ill. Comp. Stat. Ann. 5/16-2 (elements of the crime of theft of lost/mislaid property include a person's awareness of a reasonable method to identify the owner, failure to take reasonable measures to restore the property to its owner, and intention to permanently deprive the owner of the use or benefit of the property). In response, Barnett argues only that qualified immunity does not protect Kulisek because "he plainly violated Barnett's constitutional right to not be arrested or held without probable cause, or held on fabricated evidence which he caused to be placed into the Arrest Report . . . both of which were established law prior to Barnett's arrest." Doc. 172 at 25. Barnett's argument does not suffice to defeat Kulisek's entitlement to qualified immunity. Therefore, even if Kulisek did not in fact have probable cause to suspect that Barnett committed a crime, qualified immunity protects him.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment [157]. The Court enters judgment for Defendants. Case terminated.

Dated: July 14, 2023

_____
SARA L. ELLIS
United States District Judge